IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **LORRI S.,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>　vs.<br><br>**KILOLO KIJAKAZI,**<br>**Acting Commissioner of Social Security,**<br>　　　　　　　　　　**Defendant.** | Case No. 1:22-cv-00085<br><br><br>**RULING & ORDER**<br><br><br>**Magistrate Judge Dustin B. Pead** |

## I. INTRODUCTION

Plaintiff Lorri S.[1] ("Plaintiff") seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for supplementing security income under the Social Security Act (Act).[2] After careful review of the entire record along with the parties' briefs,[3] the Court finds the Commissioner's decision is legally sound and supported by substantial evidence.[4] Accordingly, for the reasons set forth herein, Plaintiff's Motion for Review of Agency Action is denied.[5]

---

[1] Based on privacy concerns regarding sensitive personal information, the court uses only the first name and initial of the last name of the non-governmental party in this case. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] 42 U.S.C. § 405(g).

[3] ECF No. 20, Plaintiff's Motion for Review of Agency Action; ECF No. 26, Defendant's Memorandum in Opposition to Motion for Review of Agency Action; ECF No. 27, Plaintiff's Reply to Motion for Review of Agency.

[4] ECF No. 17-9, 2020 Social Security Administration Decision.

[5] ECF No. 20.

## II. **BACKGROUND**

Plaintiff applied for supplemental security income in October 2014, alleging a disability beginning April 1, 2011.[6] The ALJ issued a February 2018 decision finding that Plaintiff was not disabled from October 2014 to February 2018.[7] Upon request of the agency, the court remanded that case back to the Commissioner.[8] On remand, the ALJ was tasked with further evaluating "claimant's impairments and maximum residual functional capacity, obtain[ing] supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the occupational base, offer[ing] the claimant the opportunity for a new hearing, and tak[ing] any further action needed to complete the administrative record and issue a new decision."[9] Consistent therewith, on December 10, 2020, ALJ Gerald Bruce issued a new decision concluding that Plaintiff was not disabled from October 2014 to December 2020.[10]

As set forth in the ALJ's written decision, at step 2 of the sequential evaluation process, the ALJ found that Plaintiff had the severe medically determinable impairments of degenerative disc disease of the cervical and lumbar spine, right AC joint arthrosis and supraspinatus tendinosis, fibromyalgia, Systemic Lupus Erythematosus (SLE), diabetes mellitus, obesity, depression and anxiety.[11] At step 3, the ALJ determined that Plaintiff did not have an impairment

---

[6] ECF No. 17-3, 2018 Social Security Administration Decision.

[7] *Id.*, Tr. 17-31.

[8] *Sandoval v. Saul,* 1:18-cv-157-EJF, ECF No. 26; ECF No. 27.

[9] ECF No. 17-9, Tr. 13, 2020 Social Security Administration Decision.

[10] *Id.*

[11] *Id.,* Tr. 837-838; 20 C.F.R. § 416.920(c). Citations to the Code of Federal Regulations (C.F.R.) are to the 2021 edition, which was effective on the ALJ's decision date.

2

or combination of impairments that met or medically equaled a listed impairment[12] and concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work with limitations.[13] At step 4, the ALJ found Plaintiff had no past relevant work,[14] but was able to perform the jobs of Office Helper, Rental Clerk and Mail Clerk.[15] As a result, the ALJ concluded that Plaintiff was not disabled under the Act.[16]

Thereafter, the Appeals Council determined that Plaintiff's written exceptions did not provide a basis for changing the decision, making the ALJ's December 10, 2020, decision the Commissioner's final decision for judicial review.[17] Plaintiff's July 5, 2022, appeal to this court followed.[18]

### III.  STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to a determination of whether substantial evidence in the record, taken as a whole, supports the factual findings and

---

[12] *Id.*; Tr. 837-839; 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. § 416.920(d), 20 C.F.R. § 416.925, 20 C.F.R. § 416.926.

[13] 20 C.F.R. § 416.967(b) (defining "light work").

[14] *Id.*, Tr. 848; 20 C.F.R. § 416.965. Past relevant work is defined as work performed, either as Plaintiff performed it or as generally performed in the national economy, within the last 15 years or 15 years prior to the date that disability is established. *See* 20 C.F.R. § 404.1520(f).

[15] *Id.*, Tr. 27-28; 20 C.F.R. § 416.969; 20 C.F.R. § 416.969(a); *see also* DOT 239.567-010, DOT 295.367-026, DOT 209.687-026.

[16] *Id.*, Tr. 28; 20 C.F.R. § 416.920(g); 1614(a)(3)(A).

[17] ECF No. 17-9, Tr. 823-825; 20 C.F.R. § 416.1481.

[18] ECF No. 5, Plaintiff's Complaint. This court has jurisdiction over Plaintiff's appeal of the Commissioner's final decision under 42 U.S.C. § 405(g).

whether the correct legal standards were applied.[19] A deficiency in either area is grounds for remand.[20]

Although the threshold for substantial evidence is "not high"; it is "more than a mere scintilla" of evidence, and "means---and means only---such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21] In considering the administrative record, the court may neither "reweigh the evidence [n]or substitute [its] judgment for [that of] the [ALJ's]."[22] As a result, where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[23]

## IV. **DISCUSSION**

Residual Functional Capacity is "a multidimensional description of the work-related abilities a claimant retains despite [her] impairments."[24] When formulating the RFC, the ALJ considers all medical evidence and other evidence of impairments.[25] The RFC assessment addresses an individual's ability to "do sustained work-related physical and mental activities in a

---

[19] *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[20] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

[21] *Josue R. v. Kijakazi,* 2023 U.S. Dist. LEXIS 30662, at *6 (C.D. Cali Feb. 23, 2023) (*citing Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted)).

[22] *Hendron*, 767 F.3d at 954 (citation omitted).

[23] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[24] *Pinto v. Kijakazi,* 2022 U.S. Dist. LEXIS 196123, at * 7 (D. N. M. Oct. 27, 2022); *see also* 20 C.F.R. § 416.945(a)(1).

[25] *Pinto,* at *16.

4

work setting on a regular and continuing basis"[26] and encompasses the most, "not the least[,] an individual can do despite his or her limitations or restrictions."[27]

In this case, "after careful consideration of the entire record"[28] the ALJ determined that Plaintiff has the residual functional capacity to:

> [p]erform light work as defined in 20 CFR [§] 416.967(b) with the following limitations: [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl; she can frequently handle, finger, and feel bilaterally; [plaintiff] can occasionally reach overhead bilaterally; she can never be exposed to hazards such as unrestricted heights and dangerous moving machinery. Due to physical pain and mental limitations, [plaintiff] has the ability to understand, remember, and carry out simple, routine, and repetitive tasks; [plaintiff] can perform goal-oriented but not assembly line pace work; [plaintiff] can frequently interact with co-workers, supervisors, and the general public; and [plaintiff] can adapt to routine changes in the workplace.[29]

Plaintiff bears the burden of showing that limitations should be included in the RFC.[30] In this case, the ALJ found that Plaintiff established the RFC to perform a reduced range of unskilled light work.[31] In reaching that conclusion, the ALJ evaluated the medical source statements consistent with the agency's regulations applicable to applications filed in 2014, when

---

[26] SSR 96-8p (defining a regular and continuing basis as "8 hours a day, for 5 days a week, or an equivalent work schedule.").

[27] *Id.*, 1996 SSR LEXIS 5.

[28] ECF No. 17-9, Tr. 839.

[29] *Id*.

[30] *Howard v. Barnhart,* 379 F.3d 945, 948-49 (10th Cir. 2004) (disagreeing with the claim that "the agency, not the claimant, has the burden to provide evidence of claimant's functional limitations.")

[31] Tr. 839.

Plaintiff filed a SSI application, and determined that Plaintiff's reported symptoms were inconsistent with other evidence of record.[32]

On appeal, Plaintiff challenges the conclusions reached at steps four and five of the ALJ's decision related to the RFC and the weight afforded to the medical opinions offered.[33]

### 1. Substantial Evidence Supports The ALJ's Symptom Evaluation

Plaintiff claimed to experience chronic, widespread pain due to her neck, back and shoulder disorders, fibromyalgia, lupus and diabetic neuropathy.[34] As a result of the pain, Plaintiff alleged she was unable to: sit for more than an hour, stand for longer than thirty (30) to sixty (60) minutes, walk further than about one block before needing to change position for fifteen (15) to thirty (30) minutes,[35] or lift more than five (5) to ten (10) pounds.[36] Plaintiff further alleged that she: was unable to get out of bed three to four days per week,[37] experienced depression, fatigue and "brain fog" with impaired memory and difficulty focusing on anything for more than twenty (20) minutes at a time[38] and had poorly controlled diabetes with frequently fluctuating blood glucose levels.[39]

---

[32] Tr. 837-48.

[33] ECF No. 20 at 13 (Plaintiff "accepts the Hearing-decision findings one through three as true. . . [but] disagrees with finding four and those subsequent findings based upon it").

[34] Tr. 48, 230, 259.

[35] Tr. 46, 50, 63, 264, 528, 874.

[36] Tr. 50, 572.

[37] Tr. 47, 50, 52, 877.

[38] Tr. 23

[39] Tr. 883.

6

The RFC assessment must address claimant's reported symptoms.[40] "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined."[41] Here, as reflected in the RFC, the ALJ found that Plaintiff's reported symptoms were inconsistent with other evidence.[42] This finding is due particular deference[43] and the court must uphold an ALJ's symptom evaluation when it is supported by substantial evidence.[44] Indeed, only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence" should the court find that no substantial evidence exists to support the ALJ's decision.[45] Such is not the case here. Rather, the ALJ gave several well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as she claims: (1) Plaintiff's "essentially unremarkable" physical examinations from 2014 through 2019;[46] (2) the absence of muscle atrophy to support Plaintiff's claim that she was in bed four days per week;[47] (3) the relatively conservative treatment Plaintiff received in 2019 with no emergency room visits or inquiries of alternative treatment options;[48] (4) the absence of clinical evidence or treatment for Plaintiff's claimed cervical radiculopathy;[49] and (5) evidence that

---

[40] 20 C.F.R. § 416.929.

[41] *Poppa v. Astrue,* 569 F.3d 1167, 1171 (10th Cir. 2009).

[42] Tr. 840.

[43] *White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002).

[44] *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005).

[45] *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir. 1992) (*citing Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

[46] Tr. 841.

[47] *Id.*

[48] Tr. 842.

[49] Tr. 842-43.

Plaintiff's diabetes was well controlled when she complied with medication and lifestyle recommendations.[50]

The ALJ's reasons are further discussed below in conjunction with the following general categories: (a) objective medical evidence; (b) the efficacy of her treatment; (c) symptom exaggeration; and (d) activity level. [51]

### a.    Objective Evidence

As part of Plaintiff's symptom evaluation, the ALJ determined that the objective evidence was inconsistent with Plaintiff's reports of debilitating physical symptoms.[52] In so concluding, the ALJ acknowledged Plaintiff's reports of disabling physical symptoms and pain,[53] but contrasted those reports with Plaintiff's physical examinations that showed a full range of motion and no evidence of muscle atrophy.[54] And, while Plaintiff exhibited diffuse muscular tenderness in the shoulder, low back and legs, she also retained full motor strength,

---

[50] Tr. 843.

[51] Agency regulations lay out a number of factors that an ALJ must consider when evaluating a claimant's symptoms. *See* 20 C.F.R. § 416.929. However, there is "difference" between what an ALJ must consider as opposed to what [an ALJ] must explain in the decision." *Mounts v. Astrue,* 479 F. App'x 860, 866 (10th Cir. 2012) (unpublished). Further, Plaintiff fails to challenge the ALJ's consideration of most of the evidence. *See Keyes-Zachary,* 695 F.3d at 1161 ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

[52] 20 C.F.R. § 416.929(c)(4) (the Commissioner "will evaluate your statement in relation to the objective medical evidence."); Tr. 841 ("the overall medical evidence of record does not support the level of limitation or symptom intensity that the claimant alleges in connection with this application and appeal for disability.").

[53] Tr. 840-41.

[54] Tr. 841; *see* Tr. 518, 530, 565-66, 597, 603, 749, 754, 758.

normal sensation and intact, symmetrical deep tendon reflexes throughout the upper and lower extremities.[55]

As set forth in the decision, the ALJ found inconsistencies with Plaintiff's claims of debilitating physical symptoms and a March 2015 consultative examination with Dr. Joseph Fyans ("Dr. Fyans").[56] Despite her claims, Dr. Fyans noted that Plaintiff demonstrated a full range of motion through the spine and other joints, performed a full squat and rise, walked on heels and toes in tandem and could lift, carry and handle light objects without difficulty.[57] Additionally, shortly after her February 2020 back surgery, Plaintiff reported an improvement of her right leg radicular pain and the ability to walk increased distances.[58] Further, despite Plaintiff's complaints of pain, a June 2020 exam with Dr. Marcus Mazur ("Dr. Mazur") was unremarkable with Plaintiff exhibiting full motor strength with normal muscle bulk and tone, as well as intact and symmetric lower extremity reflexes and normal coordination.[59]

### b.  Effective Treatment

It was reasonable for the ALJ to consider that effectiveness of Plaintiff's treatment when determining whether her complaints were consistent with the symptom evaluation analysis.[60] In that regard, the ALJ appropriately considered that, through 2019, Plaintiff's complaints were inconsistent with the fact that her impairments were being treated and that she responded well to

---

[55] *Id.*

[56] Tr. 841.

[57] Tr. 527-32.

[58] Tr. 1109, 1127-28.

[59] *Id.*

[60] 20 C.F.R. § 416.929(c)(3)(iv) (an ALJ must consider the effectiveness of treatment); *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

relatively conservative treatment efforts.[61] Specifically, prior to February 2020, the treatment notes consisted primarily of routine follow-up appointments for re-fills of Plaintiff's medications.[62] In addition, an April 2015 treatment note indicates that Plaintiff reported that her medications adequately controlled her fibromyalgia symptoms[63] and the record shows that Plaintiff's diabetes was controlled when she complied with prescribed medication and lifestyle recommendations.[64]

      c.      **Activity Level**

Also relevant to the symptom evaluation are Plaintiff's activities.[65] Upon review, the ALJ concluded that Plaintiff's activities were inconsistent with Plaintiff's allegedly disabling symptoms. The ALJ considered Plaintiff's abilities which included performing self-care, preparing simple meals, completing household chores and shopping in stores.[66] Although the "sporadic performance" of activities "does not establish that a person is capable of engaging in substantial gainful activity,"[67] an ALJ may consider such activities when operate to undercut a claimant's reported symptoms.

---

[61] Tr. 842-43.

[62] Tr. 283, 290-95, 311, 528, 534-35, 574-76, 695-96, 774-75.

[63] Tr. 574.

[64] *Compare* Tr. 574-75, 688, 694-95, 698-99 (high A1C readings corresponding with poor compliance with diet and exercise recommendations and failure to regularly monitor home blood glucose levels) *with* Tr. 700-01, 704, 708, 711-12, 728, 733 (A1C and blood glucose levels decreasing when complying with diet and exercise requirements).

[65] 20 C.F.R. § 416.929(c)(3)(i).

[66] Tr. 838-39; *see Wilson v. Astrue,* 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ may consider Plaintiff's activities when they undercut Plaintiff's reported symptoms).

[67] *Frey v. Bowen,* 816 F.2d 508, 516-17 (10th Cir. 1987).

### d.         Symptom Exaggeration

Finally, an ALJ may discount a claimant's reported symptoms when there is evidence of symptom exaggeration.[68] Here, the ALJ affirmatively linked his credibility determination with record evidence. For example, the ALJ considered that during Plaintiff's 2015 consultative examination with Dr. Fyans Plaintiff exhibited diffuse give-way weakness,[69] and showed normal muscle bulk and tone.[70] A reasonable person could find this evidence of symptom exaggeration that undercuts Plaintiff's claims of disabling physical symptoms.[71]

Overall, the ALJ concluded that Plaintiff's reported symptoms were not entirely consistent with the record. While some evidence was suggestive of greater limitations, and other evidence suggestive of lesser limitations, the ALJ reasonably resolved those inconsistencies and concluded that Plaintiff remained capable of the assessed RFC.[72] Thus, the court finds that the ALJ's symptom evaluation is supported by substantial evidence.

---

[68] *Wall v. Astrue,* 561 F.3d 1048, 1069-70 ("[T]he ALJ clearly and affirmatively linked his adverse determination of Claimant's [symptoms] to substantial record evidence indicating Claimant engage in malingering and misrepresentation.").

[69] *Gerard v Astrue,* 406 F. App'x 229, 232 (9th Cir. 2010) (unpublished) (finding give-way weakness to be an exaggeration that "support[s] a negative credibility determination.").

[70] Tr. 842; Tr. 531.

[71] *See Diaz v. Sec'y of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990) (upholding ALJ's symptom evaluation where an examining doctor suspected malingering).

[72] *Allman v. Colvin,* 813 F.3d 1326, 1333 (10th Cir. 2016) ("[T]he record contains support for both the notion that [the claimant] has extreme deficiencies. . . and the notion that his . . .limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so.")

### 2. Substantial Evidence Supports The ALJ's Weighing Of Medical Opinions[73]

Next, Plaintiff asserts the ALJ erred by failing to weigh the August 27, 2020 opinion of treating physician Dr. Marcus Mazur ("Dr. Mazur") and for failing to give reasons for rejecting the opinion of treating physician Dr. Gary Kunkel ("Dr. Kunkel").[74]

First, Plaintiff contends that Dr. Mazur treatment note, describing Plaintiff's August 27, 2020 office visit, is a medical "opinion" entitled to weight by the ALJ.[75] The treatment note, however, does not contain an opinion or statement reflecting Dr. Mazur's judgment. In turn, the note does not address the nature or severity of Plaintiff's impairments, symptoms or diagnosis and does not indicate "what [Plaintiff could] still do despite impairment(s), and [Plaintiff's] physical or mental restrictions."[76] Instead, the note indicates that Plaintiff was in for a follow-up visit with Dr. Mazur, after undergoing a microdiscectomy six months prior, and was experiencing pain down the back of her legs and trouble walking.[77] Dr. Mazur noted that Plaintiff had "some difficulty explaining her symptoms" and ordered an MRI.[78] Thus, because Dr. Mazur did not provide an opinion about what Plaintiff could still do, the 2020 treatment note was not a medical opinion required to weight by the ALJ.[79]

---

[73] Plaintiff applied for SSI in 2014 and as a result her claim fall under the agency's regulations for evaluating medical opinions and other medical evidence for claims filed prior to March 2017. *See* 20 C.F.R. § 416.927.

[74] ECF No. 20 at 19-20.

[75] *Id.* at 19-20; Tr. 1119-1120.

[76] 20 C.F.R. § 416.927(a)(1).

[77] Tr. 1119.

[78] Tr. 1119-1120.

[79] *See Duncan v. Colvin,* 608 F. App'x 566, 574 (10th Cir. 2015) (unpublished) ("Given that the ALJ did not reject the medical impairments found by [claimant's doctor] and there were

Next, Plaintiff asserts the ALJ erred in rejecting the opinions of Plaintiff's treating rheumatologist, Dr. Kunkel.[80] Dr. Kunkel completed two check box style forms for fibromyalgia and lupus.[81] More recently, Dr. Kunkel submitted another check-box form opining that Plaintiff would be limited to working four (4) hours per day with no more than one (1) hour standing and two (2) hours sitting.[82] Plaintiff argues the ALJ erred because he did not provide reasons for giving Dr. Kunkel's opinion little weight, failed to list the specific objective medical evidence that the ALJ found inconsistent with Dr. Kunkel's limitations and did not mention why Dr. Kunkel, as a treating physician, was not given controlling weight.

Upon review, the court finds that the ALJ provides sufficient reasons for affording Dr. Kunkel's opinion "little weight."[83] Consistency is a relevant factor when evaluating opinion evidence and more weight should be afforded to an opinion that is consistent with the record as a whole.[84] Here, the ALJ found Dr. Kunkel's conclusions to be "inconsistent with the objective clinical examinations documented in his and other treatment notes which were essentially normal with the exception of diffuse tenderness."[85] Moreover, the ALJ considered Plaintiff's autoimmune, endocrine and musculoskeletal impairments and, based thereon, reasonably limited

---

no medical opinions regarding [claimant's] work-related functional limitations, there was no opinion on such matters by [claimant's doctor] for the ALJ to weigh.").

[80] ECF No. 17-9.

[81] Tr. 814-822.

[82] Tr. 1373-1375.

[83] Tr. 844.

[84] 20 C.F.R. § 416.927(c)(4); *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (discrepancy between physician's restrictive functional assessment and contemporaneous examination is a legitimate factor for rejecting the physician's opinion).

[85] Tr. 844; *see* Tr. 518, 530, 566-67, 597, 603, 749, 754, 758.

Plaintiff to a reduced range of light work with postural and manipulative limitations.[86] Thus, the ALJ provided reasons for the weight afforded to Dr. Kunkel's opinion and the absence of objective support for Dr. Kunkel's limitations is sufficient reason for the ALJ to afford the opinion limited weight.

Next, the ALJ did not err in failing to list the specific objective medical evidence that he found inconsistent with Dr. Kunkel's limitations. To the contrary, the ALJ's decision sets forth the relevant objective evidence and the ALJ is not required to recite the same evidence in each section of the decision.[87]

Finally, for claims filed before March 27, 2017, a treating physician's opinions should be given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and the opinion is "not inconsistent with the other substantial evidence" in the record.[88] Here, the ALJ found Dr. Kunkel's opinions to be unsupported and inconsistent with the record evidence as a whole and controlling weight was not required.

## V. CONCLUSION

For the reasons stated, the Court finds the ALJ's decision to be legally sound and supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed and Plaintiff's Motion for Review of Administrative Action is denied.[89]

---

[86] Tr. 844.

[87] *Endriss v. Astrue,* 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished).

[88] 20 C.F.R. § 404.1527(c)(2).

[89] ECF No. 20.

Dated this 27th day of April, 2023.

_____
DUSTIN B. PEAD
Chief United States Magistrate Judge